[No. 18131.  In Bank.—March 28, 1894.]

# H. P. MARTIN ET AL., APPELLANTS, v. ALVA JACOB DEETZ ET AL., RESPONDENTS.  M. A. HARDING, APPELLANT.

CORPORATIONS—ORGANIZATION—FILING OF ARTICLES IN WRONG COUNTY.— Where an intended corporation did not file its articles in the clerk's office of the county in which the principal place of business of the company was to be transacted, but filed it in the clerk's office of another county, the fact that a copy of the certificate of incorporation, signed by the secretary of state, was filed with the county clerk of the county in which the business of the corporation was to be carried on, is not sufficient to make the intended corporation a corporation *de jure*.

ID.—CONDITIONS PRECEDENT TO INCORPORATION.—A corporation *de jure* is an artificial body created by operation of law upon the execution, filing, and certification of certain written instruments by persons desirous of incorporating, and certain public officers, in accordance with the provisions of general laws; and while a substantial compliance with the statutory conditions precedent to the incorporation is sufficient, yet no necessary prerequisite can be omitted, and the filing of the articles of incorporation in the office of the county clerk of the county in which the principal place of business of the company is to be transacted, and the sending of a certified copy thereof, made by said clerk, to the secretary of state, are conditions precedent to the corporation.

ID.—CORPORATION DE FACTO.—A corporation *de facto* exists where a number of persons have organized and acted as a corporation; and where the directors named in the articles never met nor acted, and no stock is issued, nor by-laws passed, nor seal adopted, nor any election held, nor any other corporate act done by an intended corporation, it is not a corporation *de facto*, and its right to exist as a corporation may be collaterally attacked in a private action.

ID.—PLEADING—ISSUABLE AVERMENT.—An averment of the existence of a *de facto* corporation is as issuable as an averment of the existence of a corporation *de jure*.

ID.—PREVENTION OF ORGANIZATION.—Where one of the directors named in a proposed incorporation persuaded other members and directors of the proposed corporation not to enter into the organization, under an alleged misrepresentation that one of the proposed directors intended to and would, if the company was organized, deprive and rob them of

all interest in the corporation and in their property, and ruin them all, such representations amount to little more than mere business advice, as to a matter about which the persons advised had as good an opportunity to form an opinion as the person giving the advice; and the other directors who, owing to the alleged misrepresentations, refused to enter into the organization, cannot, in the name of the corporation, defend against a mortgage executed by them on account of results caused by the financial embarrassment of the proposed company, and its loss of prospective profits owing to the failure to organize the corporation.

ID.—REMOTE DAMAGES—PROSPECTIVE PROFITS.—Remote results produced by intermediate sequences of causes are beyond the reach of any just and practicable rule of damages, and financial embarrassment and loss of prospective profits by a proposed incorporation are too remote, contingent, speculative, indirect, and uncertain to come within a legal measure of damages for an alleged wrong in refusing to act as a director of such proposed corporation, and inducing others not to participate in the organization.

ID.—PROSPECTIVE PROFITS, WHEN ALLOWABLE.—Prospective profits are sometimes allowed as damages for breach of contract or tort; but they must be the clear, proximate, and natural results of the wrong, and must be confined to the principal thing complained of, and to its naturally attendant consequences.

APPEAL from a judgment of the Superior Court of Siskiyou County.

The facts are stated in the opinion of the court.

*T. M. Osmont, Proctor & Mahoney, Warren & Taylor, George A. Proctor*, and *D. I. Mahoney*, for Appellants.

The alleged corporation was never a corporation *de jure* or *de facto*, as it did not comply with the conditions precedent necessary to its validity. (*Mokelumne Co.* v. *Woodbury*, 14 Cal. 424; 73 Am. Dec. 658; *Utley* v. *U. T. Co.*, 11 Gray, 139; *People* v. *Chambers*, 42 Cal. 201; *People* v. *Selfridge*, 52 Cal. 331; *Doyle* v. *Mizner*, 42 Mich. 332.) · The damages here claimed and allowed are too remote, contingent, speculative, and uncertain. (1 Sedgwick on Damages, 126, 127, 133, 138, 140, 141, 192–94, 441, 506, 607, 633 636, 638; *Mitchell* v. *Clarke*, 71 Cal. 163; 60 Am. Rep. 529; *State* v. *Ward*, 9 Heisk. 133; *Stern* v. *Rosenheim*, 67 Md. 503; *Nelms* v. *Hill*, 85 Ala. 583; *Cotter* v. *Plumer*, 72 Wis. 476; *Rogers* v. *Bemus*, 69 Pa. St. 434; *Western G. R.* v. *Cox*, 39 Ind. 260; *Morrison* v. *Darling*, 47 Vt. 67; *Dennis* v. *Stoughton*, 55 Vt. 375;

*Carland* v. *Cunningham*, 37 Pa. St. 232; Civ. Code, 3300, 3301; *Hadley* v. *Baxendale*, 9 Ex. 341; *Anderson* v. *Taylor*, 56 Cal. 132; 38 Am. Rep. 52.)

*Maxwell & McEnerney, Gillis & Tapscott, L. F. Coburn, J. F. Farraher, J. F. Lodge, Brown & Farraher,* and *Whitworth & Shurtleff,* for Respondents.

The company in question was a corporation, its failure to properly file its articles of incorporation being a mere irregularity, which was subsequently cured by a proper filing. (*Spring Valley Water Works* v. *San Francisco,* 22 Cal. 440, 441; *Mead* v. *Keeler,* 24 Barb. 20; *Cross* v. *Pinckneyville Mill Co.,* 17 Ill. 54; *Mokelumne Hill M. Co.* v. *Woodbury,* 14 Cal. 424; 73 Am. Dec. 658; *Troy etc. R. R. Co.* v. *Kerr,* 17 Barb. 581; *Eaton* v. *Aspinwall,* 19 N. Y. 119; *Abbott* v. *Aspinwall,* 26 Barb. 202; *McFarlan* v. *Triton Ins. Co.,* 4 Denio, 392; *Judah* v. *American etc. Ins. Co.,* 4 Ind. 334; *Dunning* v. *New Albany etc. Co.,* 2 Ind. 437; Angell and Ames on Corporations, 573; *Oroville and Virginia R. R. Co.* v. *Plumas Co.,* 37 Cal. 360, 361; *Bakersfield etc. Assn.* v. *Chester,* 55 Cal. 100.) The damages recovered were the direct and proximate result, or the natural and necessary consequences of, Harding's wrongful acts. (*Swain* v. *Schieffelin,* 134 N. Y. 471; *Wakeman* v. *Wheeler etc. Mfg. Co.,* 101 N. Y. 205; 54 Am. Rep. 676; *White* v. *Moseley,* 8 Pick. 356; *Holden* v. *Lake Co.,* 53 N. H. 552.)

McFARLAND, J.—This action was brought by the plaintiffs against Alva Jacob Deetz, George Lewis Deetz, Susannah D. Hathaway, Mary Polly Metcalf, Mary Elizabeth Deetz, and Henry John Deetz, who are called in the papers the Deetz family, upon a note and mortgage made by them on April 15, 1891, for $22,000, to M. A. Harding, and assigned by the latter to the Bank of California, and by said bank to the plaintiffs herein. The mortgage was upon certain timber lands, with a sawmill thereon, owned by said Deetz family. The Deetz family, in their answer, set up certain defenses, and upon cer-

tain allegations made therein the court ordered that the said M. A. Harding, and an alleged corporation called the Deetz Mill and Lumber Company, be made parties to the action. Thereupon the said Deetz Mill and Lumber Company filed a cross-complaint, to which answers were made by the plaintiffs and also by said M. A. Harding. The court first heard the issues made by the cross-complaint and answers thereto. It then considered the defenses set up by the Deetz family in their answer, and gave judgment in their favor that the plaintiff take nothing by this action. The principal contest here is made upon the cross-complaint of the said Deetz Mill and Lumber Company, and upon the findings made by the court upon the issues made by said cross-complaint and the said answers thereto. The court found that said Harding had done certain acts which caused damage to the said mill and lumber company to the extent of $20,000; gave judgment for said amount in favor of said cross-complainant and against said Harding for said amount of $20,000, and ordered that said damages should be, substantially, applied to and deducted from the amount of said mortgage. The court found that the acts of said Harding, upon which is based said damages, were known to the plaintiffs at the time they acquired said note and mortgage; and, therefore, the case was treated practically as if the suit had been brought by said Harding himself. The plaintiffs and said Harding appeal from the judgment upon the judgment-roll, which includes findings. The findings follow in the main the averments of the cross-complaint; and appellants contend that their demurrer to the cross-complaint should have been sustained, and that the findings are not sufficient to warrant the judgment. The facts alleged and found are numerous and complicated, and it would be impossible to state them all here without exceeding all reasonable length. We will confine ourselves to those which are absolutely necessary to an understanding of the case.

The note and mortgage sued on were given in lieu of,

and to take up, two other notes of the Deetz family, one given to F. N. Handy for $10,000, and another to said M. A. Harding for $7,785, which were secured by mortgages on the land covered by the mortgage here in suit. The Deetz family had been operating a sawmill on the mortgaged premises, and were very much involved in debt; and, being thus embarrassed, on or about February 20, 1891, they applied to one George F. Day for aid and assistance, and a certain written contract was entered into between them and the said Day, which is called in the pleadings and findings Exhibit A. This Exhibit A was made by said Day, party of the first part, and the said persons called the Deetz family, as aforesaid, parties of the second part; and by said contract it was agreed that they should organize a corporation to be called the Deetz Mill and Lumber Company, for the purpose of carrying on the manufacturing of lumber, the capital stock to consist of $20,000, divided into 200 shares of $100 a share, and that one-half of said shares should be issued to said Day, and the other half to said Deetz family; and the said Deetz family were to convey the premises described in the complaint herein to said corporation. It was further provided that Day was to give his time and attention to the business, and to act as superintendent, and his said one-half of the stock should be placed in the possession of George H. Maxwell, in escrow, as security for his performance of the contract; but it was further provided that said stock might be hypothecated as security for any money borrowed by Day and advanced to said company. It was further provided also that any profits which the stockholders would be otherwise entitled to as dividends should be first applied to said mortgages given to Handy and to Harding as aforesaid. (It was also agreed by the said Deetz family, in another instrument executed about the same time, that Harding might substitute the $22,000 note and mortgage sued on in this action for the said other two mortgages given to Handy and Harding as aforesaid; and it was agreed by said Day in another in-

strument of writing that the note and mortgage herein sued on should precede and take precedence over any rights of the parties accruing under said Exhibit A.) In pursuance of said Exhibit A, the parties thereto undertook to form a corporation; and said Harding agreed to become a director of said corporation for the first year, and for that purpose was to have a share of stock, and he did sign the articles of incorporation, which provided that he should be one of five directors for the first year. The property above described, belonging to the Deetz family and mortgaged as aforesaid, was situated in the county of Siskiyou, in which county the business of the said corporation to be formed was to be carried on. Articles of incorporation were prepared and properly signed, showing that the principal place of business of the intended corporation was in the county of Siskiyou, but the said articles were not filed, and never were filed in the clerk's office of said county of Siskiyou. They were filed in the clerk's office of the city and county of San Francisco, and a copy thereof was certified by the clerk of said city and county to the secretary of state, who issued a certificate of incorporation, reciting that they were certified by the county clerk of Siskiyou. Afterwards a copy of the certificate of the secretary of state was filed with the county clerk of Siskiyou county. The other four directors were said Day, one J. O. Whitney, and Alva J. D. Deetz and George L. Deetz, two of the said Deetz family. But nothing more was done towards organizing the corporation; and the Deetz family never conveyed the property to said company.

It is alleged in the cross-complaint, and found by the court, that after the filing of the articles of incorporation Harding conceived the fraudulent purpose of preventing the organization of the corporation, and of throwing its business into confusion and injuring its credit, so that it could not continue its business, and he would be able to foreclose his mortgage and secure the whole property, " the value of which greatly exceeded the amount of said mortgage." And for this purpose—as it is averred and

found—he refused to meet or act as a director, or in any way to participate in the organization of the corporation; and he also, as averred, falsely represented to the Deetz family that Day intended to rob said family of all interest in the corporation and in said property and to "ruin them all"; and that the only way for the Deetzes to protect themselves was for George and Alva Deetz, who were named as directors, to refuse to act as directors and prevent the organization of the corporation. The Deetz family were thus induced to act as advised by Harding; and George and Alva refused to meet or act as directors, and in this way they and Harding prevented the organization of the corporation. However, after the filing of the articles of incorporation, the Deetzes and Day commenced, and for several weeks continued, the business of manufacturing lumber at the mill; but at the end of that time, owing to their unpaid liabilities, and particularly to their pressing need of $3,000, they were compelled to quit, and the business and property went into the hands of a receiver.

The court attributes the failure of the corporation to organize entirely to Harding; and finds that the failure to organize prevented the borrowing of said $3,000, which would have enabled the company to go on with its business. It is found that " arrangements had been made by said Day" to advance $3,000 to the company, provided shares of stock had been issued to him, which he could have hypothecated as security for a loan; but as the directors would not meet or organize there could be no certificates of stock, and, therefore, no loan. And so the business was thus stopped by the said acts of Harding to the great damage, as is alleged, and found, of said alleged corporation. As damages it is found that for four months after the mill stopped it could have cut one million feet of lumber per month at a cost of $6.50 per thousand; that the stumpage would have been $2 per thousand; that there could have been realized, therefore, $13 per thousand; and that, therefore, the net profit for the four months would have been $18,000.

Other alleged damages for the forced sale of certain green lumber and injuries to logs from exposure to the weather are found to be $2,000—making in all $20,000; and for this $20,000 judgment is rendered for the said mill and lumber company against Harding, and it is decreed that it be applied as payment on the amount of principal and interest due on said mortgage for $22,000, upon which this action was brought.

The first contention made by appellants is that the Deetz Mill and Lumber Company, the cross-complainant, never was a corporation, either *de jure* or *de facto*, and, therefore, cannot maintain this or any action. This contention is, in our opinion, a sound one.

It is quite clear that the cross-complainant was never a corporation *de jure*. Under our system of incorporation through general laws, a corporation *de jure* is an artificial body created by operation of law upon the execution, filing, and certification of certain written instruments by persons desirous of incorporating, and certain public officers, in accordance with the provisions of such general laws. When these instruments are executed, filed, and certified as required, the corporation, *eo instante*, comes into legal existence. Its corporate life is then complete, without any further act or user; and it can be destroyed only by some subsequent act of forfeiture. The corporation is then *regularly* formed. But this result can be accomplished only by compliance with the prerequisites of the statute. It may be conceded that a substantial compliance is sufficient; but it is clear that a necessary prerequisite cannot be omitted. Under our code the first necessary thing to be done, after signing and acknowledging the "articles of incorporation" by the parties, is to file that instrument "in the office of the county clerk of the county in which the principal place of business of the company is to be transacted," and to have a certified copy thereof made by said clerk and sent to the secretary of state. (Civ. Code, sec. 296.) These are conditions precedent in that statutory process by which an

artificial person existing only in legal contemplation can be created. We are dealing now entirely with the notion of a corporation *de jure,* and leaving out of view the rights which an irregularly formed body may acquire as a corporation *de facto;* and we have been referred to no case where a corporation has been held to have been regularly and legally created without filing its original articles in the office of the clerk of the proper county. No doubt, in such a case, subsequent acts might give the body rights as a corporation *de facto.* We have nothing to do with the reason why the legislature made this requirement; although it may be said that a fundamental characteristic of a corporation has always been that it must have a *place* (Angell and Ames on Corporations, sec. 103); and it is quite reasonable that the articles should be filed at that place. At all events, the whole process is an artificial one; and the requirement mentioned is an essential part of that process by which an imaginary, invisible, intangible legal entity is brought into contemplative existence.

As to the necessity of filing the articles with the proper county clerk, the law, as deduced from the authorities cited, is thus stated in Morawetz on Corporations, section 27: "A substantial compliance with all the terms of a general incorporation law is a prerequisite of the right of forming a corporation under it. Thus, where it is provided that a certificate, or articles of association, setting forth the purposes of the corporation about to be formed, the amount of its capital, and other details, *shall be filed with some public officer,* a performance of this requirement is essential; and until it has been performed the association will have no right whatever to assume corporate franchises." And again, the, same author says: "In order to prove the existence of a corporation *de jure,* i. e., a corporation having a legal right to exist, it is necessary to prove not only the existence of the corporation *de facto,* but also the legislative authorization of its existence. A public law authorizing the formation of a corporation will be judicially recog-

nized without proof; but proof would be necessary to establish that a corporation was formed pursuant to the law, and that any conditions precedent to the legal right of forming a corporation have been fulfilled." Our code provides that the original articles of incorporation shall designate the place where its principal business is to be transacted (Civ. Code, sec. 290); and that they shall be filed with the clerk of the county where such business is to be done. In the case at bar the articles set forth the principal place of business as in Siskiyou county; and they were filed not in Siskiyou county, but in the city and county of San Francisco. This was an entire failure to comply with the necessary prerequisite of the statute; and the cross-complainant never became a corporation *de jure*.

But respondent, also, relies upon the doctrine that the existence and acts of a corporation *de facto* can be inquired into only by the state. This is, no doubt, true. The rule is stated in the second sentence of section 358 of the Civil Code. The whole section is as follows: "If a corporation does not *organize*, and commence the transaction of its business or the construction of its works within one year from the date of its incorporation, its corporate powers shall cease. The due incorporation of any company claiming in good faith to be a corporation under this part, and doing business as such, or its right to exercise corporate powers shall not be inquired into collaterally, in any private action to which such *de facto* corporation may be a party; but such inquiry may be had at the suit of the state on information of the attorney general." This does not mean, however, that whenever a pleading is signed and filed in an action by an attorney at law in which some named company whom he appears for is averred to be a corporation, all the world except the state is at once estopped from denying the existence of such a corporation. In referring to this section this court in *Oroville etc. R. R. Co.* v. *Plumas Co.*, 37 Cal. 360, per Rhodes, J., said: "This provision does not go to the extent of precluding a private person

from denying the existence *de jure* or *de facto* of an alleged corporation. It cannot be true that the mere allegation that a party is a corporation puts the question whether it is such a corporation beyond the reach of inquiry in a suit with a private person. It must be a corporation either *de jure* or *de facto*, or it has no legal capacity to sue or be sued, nor any capacity of any kind. It is an indispensable allegation in an action by a corporation that the plaintiff is a corporation ; and it results from the logic of pleading that the opposite party may deny the allegation. . . . . To say that the 'due incorporation' cannot be inquired into does not mean that no inquiry can be made as to whether it is a corporation."

An averment of the existence of a *de facto* corporation is as issuable as an averment of the existence of a corporation *de jure;* and its existence does not consist in the mere assertion of its existence in a pleading. What is a corporation *de facto?* It exists where a number of persons have *organized and acted* as a corporation; have put on the habiliments of a corporation; have assumed the form and features of a corporation; have conducted their affairs to some extent, at least, by the methods and through the officers usually employed by corporations; and have assumed the appearance, at least, of the counterfeit presentment of a legal corporate body. Nothing of this kind was done by the Deetz Mill and Lumber Company. The court finds, it is true, in general terms, that said company became and is a corporation, and has claimed in good faith to be such, and has done business as such, and that " under, and in pursuance of said contract, 'Exhibit A,' entered into the possession of the mill," and manufactured lumber " under the management of said Day as provided in said contract"; but this general finding is inconsistent with the specific findings and averments, which show what was, and what was *not*, done in the premises. And it is clear from those other findings, and from the averments of the cross-complaint, that said Deetz Mill and Lumber Company never did

CII. CAL.—5

any corporate act, or exercised any corporate power. Indeed, it was impossible, under the circumstances, for it to have done so; for it was never so organized that it could have acted, or could have *pretended* to act, as a corporate body. The directors named in the articles for the first year never met or acted, but deliberately refused to do so; no stock was ever issued; no by-laws were ever passed; no seal was adopted; no persons ever met, or pretended to meet, in corporate body assembled; no officers were ever elected; no person was ever appointed by the asserted corporation to represent it in any way, or to act as its agent; no journal or record of the proceedings of the body corporate was ever kept; and it was never in a position to exercise, or to *pretend* to exercise, any of the powers granted to corporations by title I, part IV of the first division of the Civil Code. The first sentence of section 358, above quoted, provides that if a corporation does not " organize" within a certain time its corporate powers shall cease; and the second sentence which provides that the " *due* incorporation" of a company and " its *right* to exercise corporate powers" shall not be inquired into by a private party in a suit to which " *such de facto* corporation" is a party, evidently refers to a corporation which has not failed to " organize," and which *does* " exercise corporate powers," and *thus* becomes and is a *de facto* corporation. In all the cases where a party to a suit has been held to be a *de facto* corporation it has appeared that such party had assumed, in some way, the appearance of a corporation, and had pretended to act as a corporate body. For instance, in *Lakeside Ditch Company* v. *Crane*, 80 Cal. 181, Mr. Justice Paterson, in delivering the opinion of the court, says: " We think that the evidence in support of the finding that the plaintiff was a corporation, acting in good faith as such, is sufficient. It was recognized in the community as a corporation; the records of its proceedings show that it was so acting; and in all its dealings it was styled as a corporation; it has pursued corporate *forms* of action, held corporate meetings,

and, we think, comes within the provisions of section 358 of the Civil Code." No part of this language would apply to the cross-complainant in the case at bar. Indeed, a thorough consideration of the cross-complaint itself shows that the burden of the grievance alleged is that Harding *prevented* the Deetz Mill and Lumber Company from acting or being a corporation *de facto,* or at all. But, if any legal damage arose from such act of Harding, it could be recovered only by some of the natural persons whom he prevented from forming such corporation; it could not be recovered by an alleged artificial person not *in esse.*

The foregoing views are determinative of the case against the cross-complaint, and make necessary a reversal of the judgment.

The judgment in favor of the cross-complainant, however, would have to be reversed on other grounds. The legal wrong which Harding did, if he did any, consisted in his refusal to meet and act as a director. The averment that he persuaded the Deetz family to help to prevent the organization of the corporation can hardly be considered as of any value. It is averred that he did this " by false and fraudulent misrepresentations to said Deetz family as to the purposes and intentions of said Day." But there are no facts stated as to the nature of said misrepresentations. The finding is that the misrepresentations were that " Day intended to and would, if said company was organized, deprive and rob said Deetz family of all interest in said corporation and in said Deetz property, and ruin them all." This is very general; and it amounts to little more than mere business advice as to a matter about which the Deetzes had as good opportunity as Harding to form an opinion. But if we were to waive all other points, and assume that it was Harding's duty to assist in the formation of a mere *de facto* corporation, and that his refusal to meet with the other directors, and his advice to the Deetzes not to so meet, were wrongful acts, and the cross-com-

plainant could recover for any damages resulting from said acts, still we see no just basis for the measure of damages by which the amount of the judgment was arrived at. Of course, prospective profits are sometimes allowed as damages for breach of contract or tort; but they must be the clear, proximate, and natural results of the wrong, and must be confined to the principal thing complained of, and to its naturally attendant consequences. (2 Greenleaf on Evidence, sec. 256; *Anderson* v. *Taylor*, 56 Cal. 132; 38 Am. Rep. 52.) The rule stated by our code is, that for a breach of a contract the measure of damages is "the detriment *proximately* caused thereby, or which, in the ordinary course of things, would be likely to result therefrom (Civ. Code, sec. 3300); and for a tort, "the amount which will compensate for all detriment *proximately* caused thereby." Remote results, produced by intermediate sequences of causes, are beyond the reach of any just and practicable rule of damages. (*Friend and Terry Lumber Co.* v. *Miller*, 67 Cal. 464.) "Each cause produces results that in time, alone or by combination with other causes, produce other effects, and so on *ad infinitum*" (Field on Damages, sec. 10); and in the case at bar, between the alleged wrong of Harding in refusing to act as director, and the final damages alleged to have been caused by the results of the financial embarrassment of the Deetz company, there is a series of consecutive causes and effects which carries those alleged damages so far away from the alleged wrong as to make them entirely too remote to be called in any sense "proximate." They are entirely too contingent, speculative, indirect, and uncertain to come within any legal measure of damages. The judgment allows full prospective profits that might possibly have been made out of the timber and the mill during four months, while the timber and the mill still remain with the same possibility of making in the future the very profits for which the judgment was rendered. And it is a curious result that the Deetzes reap the main

advantage of an alleged wrong which they themselves
helped to perpetrate, and which they could easily have
prevented.   By the judgment they got their note and
mortgage for twenty-two thousand dollars almost en-
tirely wiped out merely because Harding refused to act
as director; when, if they had acted with the other
two directors, Day and Whitney, the corporation would
have been organized, and the alleged consequent calam-
ities averted, despite the action of Harding.   The excuse
that the latter tempted them is not very cogent.

Our conclusion is, that upon the cross-complaint and
findings the judgment should have been against the
cross-complainant, and in favor of plaintiffs and defend-
ant Harding.

The case has been argued on both sides almost en-
tirely upon the issues made by the cross-complaint and
the answers thereto, and as if the determination of those
issues would be determinative of the whole case.   Ap-
pellants contend that upon a reversal of the judgment
in favor of the cross-complainant, the court below should
be directed to give judgment foreclosing the mortgage
as prayed for in the complaint.   The judgment, as a
whole, no doubt so involves the rights of all parties that
it must stand or fall as an entirety, and its reversal will
perhaps practically end the litigation; but upon the
record we do not see our way clear to direct the court
below to at once enter a judgment in favor of plaintiffs
and against the Deetzes foreclosing the mortgage.   Upon
that branch of the litigation the cause must be remanded
for further proceedings.

The entire judgment is reversed, with directions to
the court below to dismiss the cross-complaint of the
so called Deetz Mill and Lumber Company, with costs to
plaintiffs and defendant Harding; and with respect to
the defendants, Alva Jacob Deetz, George Lewis Deetz,
Susannah D. Hathaway, formerly Deetz, May Polly
Metcalf, formerly Deetz, May Elizabeth Deetz, and Henry
Deetz, the cause is remanded for further proceedings in
accordance with this opinion.

DE HAVEN, J., FITZGERALD, J., PATERSON, J., GA-
ROUTTE, J., and HARRISON, J., concurred.

Rehearing denied.