[Sac. No. 666. In Bank.—December 7, 1900.]

## THE PEOPLE ex rel. REBECCA THISBY, Appellant, v. RECLAMATION DISTRICT No. 556, Respondent.

Reclamation District—Validity of Organization—Quo Warranto.— A reclamation district regularly organized under section 3446 of the Political Code has a legal existence which cannot be successfully assailed in *quo warranto* if there is no existing swamp land or reclamation district within its limits.

Id.—Defunct Swamp Land District—Repeal of Organic Act—Failure to Reorganize.—A swamp land district organized under the act of 1861, and failing to take any steps to reorganize under the act of 1868, which substituted a new scheme for the reclamation of swamp land's, and contemplated a reorganization of existing districts thereunder and expressly repealed the act of 1861, ceased thereafter to exist, and is not an obstacle to the subsequent organization of a reclamation district including its original limits.

Id.—Repealing Act—Construction of Proviso.—The proviso in the act of 1878, which repealed the act of 1861, that "until such organization said districts now formed shall proceed under the laws now in force," is to be construed as applying to existing districts reorganizing under the repealing act, and as allowing them to proceed under the laws theretofore in force, during the period of transition, and not as intended to apply to an existing district which took no steps to reorganize under the act of 1878. [Beatty, C. J., dissenting.]

Id.—Former Reclamation District Illegally Organized — Failure of Petition to Describe Lands.—A former reclamation district illegally organized under the Political Code, owing to the failure of the petition for its organization to set forth "a description of the lands by legal subdivision or other boundaries,"

is not a bar to the regular organization of another reclama-
tion district.

Id.—General Objection to Petition—Jurisdiction of Supervisors—
Objection Upon Appeal.—The fact that the defective petition
was objected to generally at the trial, and upon other grounds
than that it did not confer jurisdiction upon the supervisors
to act thereupon, cannot preclude the urging of such objection
upon appeal.

Id.—De Facto District—Support of Finding.—The *de facto* existence
of the former reclamation district which has no *de jure* exist-
ence may be controverted; and a finding against its *de facto*
existence is sufficiently sustained by proof that after the board
of supervisors had approved the insufficient petition nothing
further was done for over fifteen years, when it first began to
act as a corporation, and acted for about one year, when it
ceased to act entirely, and its members and officers long sub-
sequently united in the regular organization of the reclamation
district respondent.

APPEAL from a judgment of the Superior Court of Sacra-
mento County and from an order denying a new trial. Matt.
F. Johnson, Judge.

The facts are stated in the opinion of the court.

Ex-Attorney General W. F. Fitzgerald, Johnson & Johnson,
Grove L. Johnson, and Devlin & Devlin, for Appellant.

A. L. Shinn, Catlin, Shinn & Catlin, and W. A. Gett, for
Respondent.

THE COURT.—*Quo warranto.* The complaint alleges that
defendant is illegally claiming to be and acting as a reclama-
tion district, and that the organization of defendant was unlaw-
ful, and that it never became a reclamation district. A gen-
eral demurrer was overruled and defendant answered, alleging
the regular formation of defendant as a reclamation district
on the eighth day of September, 1893, under the provisions of
the Political Code.

Defendant had judgment that it "was a public corporation,
to wit, a reclamation district, legally organized and existing
under the laws of the state of California, and legally entitled
to exercise corporate functions and powers." A motion for
a new trial was denied, and plaintiff appeals from the order
and from the judgment.

The court found that defendant was organized under section 3446 of the Political Code. Appellant does not dispute that on the face of the proceedings defendant was regularly organized. It is claimed by plaintiff that on July 13, 1861, the state board of swamp land commissioners, pursuant to law, formed the entire body of land known as Andrus island, in Sacramento county, comprising about seven thousand six hundred and twenty-four acres, into a swamp land district designated as swamp land district No. 8, a portion of which was included within the boundaries of defendant district; that under the act of March 28, 1868 (Stats. 1867-68, p. 507), known as the Green act, the board of supervisors of said county, on April 7, 1869, organized reclamation district No. 75 out of part of the land included in district No. 8; that said board, on December 9, 1874, organized another reclamation district from the lands in said Andrus island, including part of the land in district No. 75, and known as reclamation district No. 213; that each of these districts includes lands embraced within the boundaries of defendant district; that if any one of them has a legal existence the defendant district cannot stand, since it was not organized under section 3481 of the Political Code relating to the formation of a district from lands already embraced within the boundaries of an organized district, but was formed under section 3446 of said code, upon the assumption that no organized district stood in its way. The court found that neither district No. 8, nor district No. 75, nor district No. 213, has now, or ever has had, any legal existence as a swamp land or reclamation district.

1. Appellant interposes the organization of swamp land district No. 8 as an insuperable barrier to the valid organization of defendant district. District No. 8 was set apart as a swamp land district under the act of 1861, *supra*. The scope, purpose, and effect of this act were concisely yet comprehensively set forth in *People v. District No. 551*, 117 Cal. 114, which was a case similar to the one now presented. All the points made in support of district No. 8 in this case were made in the case cited, except that it is now claimed that section 32 of the act of March 28, 1868, was overlooked, and that the effect of this section was to leave district No. 8 in the control of the board of supervisors, under the act of April 2, 1866. (Stats.

1865-66, p. 799.)   The act of 1868 substituted a new scheme
for the reclamation and sale of swamp and overflowed lands
to take the place of the various schemes developed in preceding
statutes.   At the close of section 32 is found the following
provision: "After any district now formed shall organize un-
der the provisions of this act, the supervisors of the county
shall turn over to the trustees all the books and papers in their
possession relating solely to that district; provided, that until
such organization, said districts now formed shall proceed un-
der the laws now in force."   Appellant calls attention to the
plain language in this proviso, and claims that to give it effect,
as must be done, there is no escape from his position, and
therefore district No. 8 is still operating under the act of 1866.
Section 71 of the act of 1868 expressly repeals the act of
1866, together with a number of other acts on the same sub-
ject, and we have no doubt that the later act was intended
to take the place of the act of 1866 and not to leave the lat-
ter act in force as to all districts theretofore organized.   It
certainly was not intended that the two acts were to remain
in force, else the act of 1866 would not have been in terms
repealed, and some more explicit provision would have been
placed in the act showing such intention.   The later act con-
templated a reorganization of the districts previously formed,
but it very properly provided that such districts as intended
to continue in existence should, during the period of transi-
tion, proceed under the laws theretofore in force.   The pro-
viso applied to reorganized districts, but did not and was not,
in our opinion, intended to apply to a district, like No. 8,
that took no steps to reorganize, and so far as the record
shows, transacted no business after May 5, 1869.   At this last
meeting the board of supervisors passed a resolution annulling
all contracts for works of reclamation in the district, and di-
rected the clerk to notify the controller of the state that all
contractors have been fully paid for work contracted prior to
March 28, 1868 (the date of the passage of the act of 1868),
and requesting him to transfer to the supervisors of Sacra-
mento county all books and papers in his possession relating
to said district, and to draw his warrants for the cash balances,
if any, standing to the credit of said district.   This action was
apparently in compliance with section 47 of the act of 1868

and is consistent with an intention to reorganize under the act, and we find nothing in any of the minutes offered in evidence to show that the district attempted or desired to continue its existence under the repealed act of 1866, or any other act.

Respondent presents sundry requirements of the act of 1861 with which the district failed to comply and which it is claimed were essential to the forming of a district, but we do not deem it necessary to go over this ground. We are satisfied that the court correctly held in *People v, District No. 551, supra,* that districts formed under the act of 1861 went out of existence when by the later acts the legislature changed its policy for their government and control; and as appellant claims district No. 8 to be a district under the act of 1861 we must hold that it no longer exists.

2. Appellant makes a feeble claim that District No. 75 was legal and stood in the way of forming the defendant district. All that is said in support of the claim is that the petition was in due form, properly published, and duly approved by the board of supervisors. It does not appear that it ever after assumed to act, or that any business was transacted in its name. The court, however, found that none of the lands included within the boundaries of this district fell within the boundaries of defendant district, and this finding is not attacked. There is then no conflict here.

3. But appellant contends if there be doubt as to the existence of district No. 75, because formed under the act of 1868, there can be no doubt that district No. 213 was legally organized under the Political Code as it stood when it was organized December 9, 1874. Section 3446 of that code required the petition, among other things, to set forth "a description of the lands by legal subdivisions or other boundaries." The petition described the various bodies of land as "tract all of swamp land survey Nos. 329 and 330," and similarly as to all the tracts of the several petitioners. The same method of description was held jurisdictional and insufficient in *Ralston v. Board of Supervisors,* 51 Cal. 592, and also in *Ferran v. Supervisors,* 51 Cal. 307, by two of the judges. *Ralston v. Board of Supervisors, supra,* has never been overruled or questioned so far as we are advised, and we see no reason why it should be. Appellant does not dispute the cor-

rectness of these decisions, but meets them by claiming: 1. That the decision of the board of supervisors on the question is final; 2. That their decision cannot be collaterally attacked; 3. That a corporation cannot be attacked collaterally; and 4. That at the trial defendant did not make the objection, and it is too late to raise the question now.  Defendant did not at the trial make the specific objection that the land was not described in the petition.  The objection upon the offer of the petition was that it was irrelevant, immaterial, and incompetent, and some specific objections were stated, but none directly reaching the point in question.  Appellant cites numerous cases to show that an objection cannot be first raised in the supreme court, especially one which could have been cured in the lower court; and two cases are cited—to wit, *Howard v. Harmon,* 5 Cal. 78, and *Shay v. Superior Court,* 57 Cal. 541— to the point "that an objection as to jurisdiction must be raised first in the court below."  In the first of these cases the objection was that no appeal bond had been filed in the justice's court when the appeal was taken to the county court. The objection was not made in the court below, and it was held too late to make it here because if it had been made in the county court it would have been its duty to hear the excuse for the failure, and if sufficient to allow the bond then to be filed.  In the other case there were some defects in the proceedings to appeal the case from the justice's court to the superior court, as to which no objection was raised until the case came here, where it was urged that the superior court had no jurisdiction to try the case.  It was held that, as no objection was made to the regularity of the proceedings in the court below, it was too late to take advantage of the insufficiency of the notice of appeal or of the undertaking.  The many cases cited by appellant relate to questions of incompetent evidence, admitted without objection, to the regularity of proceedings or to objections which if presented in time might have been obviated.  In the case now here, there is no dispute but that the petition as shown in the record is the petition as presented to the board of supervisors; it is not suggested that any evidence would have cured the defect in the description or that it could have been cured.  The objection here goes to the jurisdiction of the board to act upon the pe-

tition. It does not depend upon their adjudicating certain facts upon the existence of which their jurisdiction depended. Their jurisdiction depended upon the presentation of a petition setting forth the jurisdictional facts, failing in which the petition conferred no jurisdiction, and the objection could have been taken at any stage of the proceedings and can be taken for the first time here. (*In re Grove Street,* 61 Cal. 438.)

Appellant contends, conceding that the steps taken were not legally sufficient to form district No. 213, that it was a *de facto* corporation and cannot be attacked collaterally nor otherwise except in a suit by the state. (Citing *Dean v. Davis,* 51 Cal. 406, and *People v. La Rue,* 67 Cal. 526, and some other cases.)

In the present instance it does not appear to be necessary to consider whether and to what extent defendant is attacking district No. 213 collaterally. Defendant answered the challenge of the state by showing a charter grounded upon strict compliance with the law. The form and regularity of the proceedings by which it was called into existence are not questioned. But plaintiff interposes what it claims is a legally organized district which embraces all of the land included in defendant district, and therefore it is claimed that defendant was not legally formed. Plaintiff, as we have seen, failed to show compliance with the law, and proof of its *de jure* existence failed. Plaintiff then relied on a *de facto* organization, and certain evidence was submitted in support thereof. Its *de facto* existence became an issuable fact as much as did the fact of its *de jure* existence. The rule invoked by plaintiff does not preclude defendant from controverting the *de facto* existence of the district asserting it: *Oroville etc. R. R. Co. v. Plumas County,* 37 Cal. 354; *Martin v. Deetz,* 102 Cal. 55.[1] What are the facts? An insufficient petition was filed December 9, 1874, with the board of supervisors and was on that day approved. Nothing further was done until July 8, 1890, when one of the original petitioners filed a petition asking an order of the board to call an election for trustees, which was done by the board, it appearing that by-laws had been previously adopted, although at what date does not appear. On October 3, 1890, the result of the election was reported to the supervisors, showing the election of Sol. Runyon, G. A. Knott, and

---

[1] 41 Am. St. Rep. 151.

P. Crew as the trustees chosen. On February 6, 1891, the trustees reported to the board of supervisors that they had "employed an engineer to survey, plan, locate, and estimate the cost of the works necessary for such reclamation," etc.; that he had made report in writing which they had approved January 14, 1891, and inclosed with their report to the board a copy of the engineer's report. The trustees requested the board of supervisors to appoint three disinterested persons to view and assess upon the lands a charge proportionate to the whole expense of forty thousand dollars (the estimated cost of the work), etc., and on February 6, 1891, the board appointed three persons as prayed for by the trustees. No further action has been taken by the district. On August 7, 1893, two years and a half after the last action of district No. 213, petition for the organization of defendant was filed and was signed by Runyon, Knott, and Crew, who were trustees of district No. 213, and by the owners of more than half of the land included in district No. 213, and defendant district included all the lands within the boundaries of district No. 213. The court found that the prior districts never had any legal existence, and the finding rests upon the lack of any legal organization such as made them corporations *de jure*, and upon the evidence tending to show that they were not claiming in good faith to be districts nor doing business as such and were not corporations *de facto*. Just how much business must be done by a corporation assuming *de facto* powers, or what facts showing good faith are necessary to constitute the corporation a *de facto* organization, can be determined by no fixed rule. In this case it appears that nothing was attempted to be done after the petition was filed for over fifteen years; the supervisors were then asked to call an election for trustees of the district, and this was done and trustees were chosen; they employed an engineer to make a plan, and he reported and the report was approved; the supervisors were asked to appoint persons to assess the lands, and this the board did in 1891, since which time nothing further has been done; the trustees appointed for district No. 213 united with other of the original petitioners and formed a new organization embracing all the lands included within district No. 213, and were going forward with the work of reclamation when this action was be-

gun; none of the petitioners for district No. 213 are complaining, and there is no evidence that any person interested desires that the district should be kept upon its feet; it has no legal existence, and its right to continue because a *de facto* concern is interposed now rather to defeat what appears to be an effort, after many years of inaction, to do something toward keeping faith with the general government and for the benefit of the land owners, than to enable it to go forward itself to do the work contemplated in its creation. It would seem to be an effort to prevent reclamation rather than to promote it, and we cannot, therefore, say that the finding of the court is unsupported by the evidence.

The judgment and order are affirmed.

BEATTY, C. J., concurring.—I concur in the judgment, but I dissent from so much of the opinion as rests upon the proposition decided in *People v. District No. 551*, 117 Cal. 114, that swamp land districts formed under the act of 1861 ceased to exist after the passage of the Green act in 1868. I think all districts which had been "formed" in the sense of section 32 of the latter act (Stats. 1867-68, p. 515) were by that section kept in existence, and that for the purposes of such districts, until reorganized under the new law, the original act of 1861 and the amendatory act of 1866 remained in force notwithstanding their repeal for all other purposes. If, therefore, district No. 8 was ever "formed," within the meaning of the Green act, I should be forced to conclude that it was still in existence when the proceedings were had for the organization of the defendant, and that those proceedings under section 3446 of the Political Code were ineffectual.

But the superior court has found, upon evidence which I think sustains the finding, that district No. 8 never had a legal existence. It seems to have acquired the designation of swamp land district No. 8 solely by reason of the petition for its formation and the order of the commissioners for a preliminary survey. From that time forward it was called swamp land district No. 8 in reports of engineers and state officers and acts of the legislature. But it clearly was not constituted a swamp land district by a mere order of the commissioners for a preliminary survey, the only result of which might be to demonstrate the fact that no reclamation could be effected. And,

yet, for the purpose of that order, and for the purpose of designating the fund out of which the expenses of the preliminary survey were to be paid, it might be, as in fact it was, conveniently designated as swamp land district No. 8. The result of the preliminary survey, made under the order of the commissioners, was to show the reclamation could not be effected with the funds available, and no plan of reclamation seems to have been adopted—no contract was let, and all proceedings ended with the payment of the expenses of the survey. This was not, in my opinion, a formation of the district in the sense of section 32 of the act of 1868. It was not within the reason of that proviso. Such, indeed, seems to have been the view of the matter upon which the board of supervisors, and all others concerned, have acted during a period of nearly forty years prior to the proceedings for the formation of the defendant.

Upon the grounds thus briefly indicated I hold that swamp land district No. 8 was no obstacle to the formation of defendant, and as to the other districts I concur in the principal opinion.