[Civ. No. 723.   Third Appellate District.—July 13, 1910.]

## PETER D. BARNES, Petitioner, v. BOARD OF SUPERVISORS OF COLUSA COUNTY et al., Members of Said Board, Respondents.

PROTECTION DISTRICT—PETITION FOR FORMATION—SIGNATURES OF PROPERTY OWNERS—PRESUMPTION—BURDEN UPON PETITIONER FOR WRIT OF REVIEW.—Upon a petition for a writ of review to annul a proceeding for the formation of a protection district under the act of March 27, 1895, for the improvement and rectification of the channels of innavigable streams, it must be presumed that, when the petition for the formation of the district was filed, the board of supervisors required and received evidence as to the genuineness of the signatures thereto, and that the signers were "property holders of the district"; and the burden is upon the petitioner for the writ of review to overcome the presumption that the supervisors performed their duty in that regard, and to overcome their finding to that effect, and to show that the board of supervisors had no jurisdiction to form the district; and that presumption and finding must prevail, in the absence of any evidence to the contrary.

ID.—ORDER OF PROCEEDING UNDER STATUTE.—To require proof as to the signatures of property owners before the board passes a resolution of intention to organize the district is the natural order of procedure contemplated by the statute; and no reason appears why such evidence should be repeated at the time of hearing of objections of the property owners, if any, to such work or improvement, where no issue as to the number of property owners signing the petition is raised at that time.

ID.—OBJECTIONS TO WORK OR IMPROVEMENT OR EXTENT OF DISTRICT—HEARING BY BOARD.—Under section 3 of the statute, "Any person interested objecting to such work or improvement, or to the extent of the district of lands to be affected or benefited by such work or improvement, and to be assessed to pay the costs and expenses thereof, may make written objections to the same within ten days after the expiration of the time of the publication of said notice," and thereafter such objection shall be heard by said board.

ID.—OBJECTIONS BY PETITIONER FOR WRIT OF REVIEW—ADVERSE FINDING BY BOARD.—Where the petitioner for the writ of review specified his objections to such improvement and to the extent of the district, on the ground that the work as contemplated would injure his lands, specifying in what respect, and that the formation of the district would burden the taxpayers, and evidence was heard as to the objections specified, and the finding was against the petitioner, the board was not required at that time to do anything more, assuming that its prior proceedings were regular.

Id.—Proof of Publication of Notice—Adjudication by Board—Order Establishing District—Subsequent Filing of Affidavit Immaterial.—Where the record of the board of supervisors containing the order establishing the district shows that it was adjudicated that the notice was published as required by law, and its finding is not disputed, the subsequent filing of an affidavit of publication is of no consequence, as it is merely additional evidence which does not prove, nor tend to prove, that the board did not have sufficient and proper evidence before them as to the publication of notice when the order was made.

Id.—Answer to Objection of Petitioner for Writ of Review.—It is held a sufficient answer to an objection to the proof of publication by the petitioner for the writ of review that the statute does not require the filing of an affidavit of publication before the order is made, although this would be the usual course, that the publication was actually made as required, that the hearing was had at the proper time, and that such petitioner had actual notice and was present with his objections at the appointed time, and was duly heard by the board before the order was made establishing the district.

Id.—Power of Supervisors to Change Boundaries of District.—The supervisors have power to change the boundaries of the district to make them more definite and certain than in the petition and resolution of intention, or to conform them to the needs of the district.

Id.—Protection District Act Constitutional—Power of Assessment not Delegated — Report of Commissioners — Hearing upon Notice.—The act for the formation of protection districts is constitutional and valid. The supervisors are not thereby deprived of the power to levy and fix the amount of the assessment on the lands within the district. That power is not improperly delegated to the commissioners appointed to view the land, make estimates and report their investigations to the board, which sets the same for hearing upon notice and determines the assessment, being limited only as to the proportion imposed upon the county.

Id.—Double Taxation not Involved.—The act does not involve double taxation. The tax is for the public improvement within a certain district of especial benefit to the lands therein, but incidentally of benefit to the county at large. The land owners cannot complain that part of the tax is assessed to the county; and the general scheme involves the same principle as is found in the reclamation and irrigation district legislation which has been upheld by the higher courts.

Id.—De Facto Corporation—Validity Only Assailable in Quo Warranto.—The rule that a *de facto* corporation cannot be questioned as to its validity by private individuals, but only in *quo warranto* at suit of the state, applies to a *de facto* protection district.

ID.—WRIT OF REVIEW NOT SUSTAINABLE.—It is held that the writ of review is not sustainable on the merits, whether the protection district was a corporation *de jure* or *de facto*, and that, in either case, the petition for the writ must be denied.

PETITION for writ of review to annul the action of the board of supervisors of Colusa County establishing a protection district.

The facts are stated in the opinion of the court.

Arthur C. Huston, and Ernest Weyand, for Petitioner.

Frank Freeman, for Respondents.

BURNETT, J.—This is a proceeding to review the action of the board of supervisors of Colusa county culminating in the establishment of what is known as "the Boggs Protection District."

It is conceded that the warrant for the board's proceedings in the premises is found in the act of the legislature approved March 27, 1895 (Stats. 1895, p. 247), entitled "An act to provide for the formation of protection districts in the various counties of this state, for the improvement and rectification of the channels of innavigable streams and watercourses, for the prevention of the overflow thereof by widening, deepening and strengthening and otherwise improving the same, and to authorize the boards of supervisors to levy and collect assessments from the property benefited to pay the expenses of the same," and as amended in 1909. (Stats. 1909,. p. 807.)

Petitioner bases his request and contention for an annulment of the proceedings of the board creating said district upon the grounds: 1. The board of supervisors had no jurisdiction of the subject matter, for the reason that there was no proof that the petition for the organization of the district was signed by ten property holders as required by the statute;. 2. The board proceeded to establish the district without any proof that the notice of intention had been published as required by law; and 3. That the act itself providing for these protection districts is unconstitutional, and therefore void.

The first contention of petitioner is supported—so it is claimed—by the testimony of W. J. King, the county clerk, who testified in this court that he was not present at the meet-

ings of the said board of supervisors when the petition for the
formation of the district and the resolution of intention "was
up before the board, but after that, at all sessions, I was."
When the objections of Mr. Barnes were heard the witness
was present and he declared as to what occurred: "My re-
membrance of it is that Mr. Weyand, on behalf of Mr. Barnes,
objected or began talking to the board in regard to it, that
there were not property owners that had signed the petition,
and Mr. Freeman answered him that the question had been
settled when the resolution of intention was published by the
board; that that question had previously been settled; and the
board proceeded with the other business of the formation of
the protection district immediately after that without any
further consideration. I do not remember of any testimony
on the subject of the ownership of the land. The statements
of attorney Weyand and attorney Freeman were all I remem-
ber." It is to be observed that the witness is somewhat
uncertain as to what occurred. No doubt, however, he details
the transaction as he remembers it and, probably, as it took
place. We may, indeed, accept his testimony as sufficient to
overcome the finding of the board of supervisors that "said
petition having conformed to all requirements of the law,
and being signed by the proper number of property holders
of the district and land owners," and yet this effect must be
limited to the particular time concerning which the county
clerk testified. We must presume that when the petition was
filed the board required and received evidence as to the genu-
ineness of the signatures, and that the signers were "property
holders of the district." The presumption that the super-
visors did their duty in that regard and the finding that the
petition was signed by "the proper number of property
holders" must certainly prevail in the absence of any evidence
to the contrary. It is not denied that the burden in this pro-
ceeding is upon the petitioner to show that the board of super-
visors had no jurisdiction to form said district, and it would
be singular if the board required no proof as to the signatures
before passing a resolution of intention to organize the dis-
trict. To require such proof is the natural order of procedure
contemplated by the statute. And there seems no reason why
the evidence should be repeated at the time of the hearing of
the objections of the property owners, if any, to said work or

improvement, especially when no such issue is raised by any property owner. The statute provides (section 3) that ''Any person interested, objecting to such work or improvement, or to the extent of the district of lands to be affected or benefited by such work or improvement and to be assessed to pay the costs and expenses thereof, may make written objections to the same within ten days after the expiration of the time of the publication of said notice,'' and thereafter such objection shall be heard by said board. Petitioner herein, in accordance with the said provision of the statute, filed his written objection to the formation of said district to the effect that the work as contemplated would be an injury to his lands—specifying in what respect—and that the formation of said district as contemplated ''would burden the general taxpayers of said county with an additional burden to keep up the said works contemplated to be constructed.'' The return shows that evidence was heard as to these specifications and the finding was against petitioner. The board was not required at that time to do more, assuming that its prior proceedings were regular.

The only additional adverse suggestion as to this refers to the filing of the affidavit of publication. It appears to have been filed subsequent to the order of the board establishing the district, but as stated by respondents, this is of no consequence, ''for in fact it shows that the notice was published and may be additional evidence of that fact. The record of the board shows that it was adjudicated that the notice was published as required by law in the 'Daily Colusa Sun.' This finding is not disputed or any showing made that such publication was not made. The filing of this affidavit does not prove or tend to prove that the board did not have sufficient and proper evidence before them as to the publication of the notice.'' A sufficient answer to petitioner's contention would indeed seem to be that the statute does not require an affidavit of publication to be filed before the order is made, although this would be the usual course, that the publication was actually made as required, that the hearing was had at the proper time, and that petitioner had actual notice and was present with his objections at the appointed time, and was duly heard by the board before the order was made establishing the district. Neither is there any merit in the contention

that the supervisors were divested of jurisdiction by reason of a change in the boundaries of said district. It appears from the return that the description in the order establishing the district was made more definite and certain than in the said petition and resolution of intention, but the identity of the land seemed to be the same. At any rate, the statute authorizes a change as follows: "Such board may, in its discretion, sustain, in whole or in part, any or all of the objections made and filed, and may change or alter the boundaries of such district to conform to the needs of the district."

The objections made to the constitutionality of the act we think are equally untenable. The supervisors are not deprived of the power to levy and fix the amount of the assessment on the land. It is true that the commissioners view *the lands* and the improvements affected, and determine in the first instance the value thereof and the damage to the same, and also the estimated amount of the cost of the proposed work and the expenses incident thereto, and they assess the same upon the lands embraced within the exterior boundaries of such protection district, and report the result of their investigations to the board of supervisors. The latter, however, are not bound to adopt the report. It is set for hearing and notice given thereof, and any objections that may be made by the land owners are considered, and the board of supervisors finally determine the assessment, being limited, however, as to the proportion they may impose upon the county.

The cases cited by petitioner are entirely different. For instance, in *People* v. *Houston,* 54 Cal. 536, as stated in the syllabus: "By a special act in relation to a swamp land reclamation district, the trustees were required to make up a sworn statement of the cost of the reclamation work 'based upon the books and vouchers thereof,' and the amount so reported was to be assessed upon the lands." The supreme court declared that "It is, in effect, nothing more nor less than an attempt by the legislature to levy an assessment upon the lands of the district—the amount being the sum total shown by the books and vouchers, without any reference to the nature or character of the charges on the books, and irrespective of any question as to whether the law authorizing and providing for the work has been complied with."

So, in *McCabe* v. *Carpenter,* 102 Cal. 469, [36 Pac. 836], the legislation was condemned, for the reason that the amount of the tax was left wholly to the discretion of an executive officer, and thereby delegating legislative power to the county superintendent of schools.

Nor is the act open to the objection that it involves double taxation. The tax is manifestly for a particular purpose, a public improvement within a certain district, of especial benefit to the lands within said district, but incidentally of advantage to the county at large. The land owners within the district certainly cannot complain that a portion of the tax is assessed to the county, and the general scheme involves the same principle as is found in the reclamation and irrigation legislation which has been upheld by the higher courts.

Aside from the foregoing, there is much plausibility in the suggestion of respondents that we have the case of a *de facto* corporation, and that the only course open to petitioner to have its validity determined is through *quo warranto* by consent of the attorney general. The decisions of the supreme court upon this question were recently reviewed by this court in the case of *Reclamation Dist. No. 765* v. *McPhee, ante,* p. 382, [109 Pac. 1106], and it is unnecessary to repeat the discussion. It may be said, though, that *Keech* v. *Joplin,* 157 Cal. 1, [106 Pac. 222], involved the validity of the organization of a protection district, and the supreme court therein declared that the doctrine applies to such districts as well as to irrigation and reclamation districts, and "the validity of the organization of such a district cannot be questioned by private individuals, but only in a proceeding in *quo warranto* at the suit of the state." The only controversy could be as to whether the record here discloses a *de facto* corporation. As to this point, quotation was made in the McPhee case, *supra,* from *Martin* v. *Deetz,* 102 Cal. 55, [41 Am. St. Rep. 151, 36 Pac. 368], as follows: "What is a corporation *de facto?* It exists where a number of persons have organized and acted as a corporation; have put on the habiliments of a corporation; have assumed the form and features of a corporation; have conducted their affairs, to some extent at least, by the methods and through the officers usually employed by corporations; and have assumed the appearance, at least, of the counterfeit presentment of a legal corporate body."

The petition and return herein show that at a regular session of the board of supervisors of Colusa county a petition was presented and filed for the formation of a protection district; that said board passed a resolution to improve said Willow creek and to form said protection district; that said resolution was published as required by law; that a hearing of said petition was had by said board, and an order made establishing said district and designating it as the "Boggs Protection District"; that said board adopted plans for the work contemplated, and appointed commissioners to assess damages and to proceed under said act with all matters by the said commissioners deemed necessary, to the end that said Willow creek might be improved and controlled; that said commissioners qualified and were about to proceed with the work required of them when it was arrested by this proceeding. It is clear that the district established had the appearance of a legal corporate body. There was a complete organization of the district under color of title, with no step omitted that the statute makes a prerequisite for the beginning of the work by the commissioners, and it is difficult to perceive how the case would be different in principle if said commissioners had actually proceeded in the work which they contemplated. But it is unnecessary to decide this question, as upon the merits we think respondents should prevail.

The order to show cause is therefore discharged and the writ denied.

Hart, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 13, 1910.